IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JERRY WAYNE ANTHONY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-058 |
| | ) | |
| DENNIS BROWN, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

*Liberally* construing Plaintiff's complaint,[2] the Court finds that Plaintiff names the following Defendants: (1) Dennis Brown, the Warden at ASMP; (2) T. J. Conley, Deputy Warden at ASMP; and (3) Donna Young, Mental Health Director at ASMP. (Doc. no. 1, pp. 1, 4.) Plaintiff alleges that he arrived at ASMP on April 5, 2011, and that he was placed in "S.L.U. High Max" ("SLU") under care of Defendant Young, where he stayed for a year and a half. (Id. at 5.) Plaintiff asserts that he was placed in the SLU against his will, but that while he was in the SLU, he had all of his personal property, could write his family and receive visits, could go to the store and receive packages, and "all just as population inmates," with the "only" difference being that he was on lockdown for twenty-three hours per day with one hour of yard call. (Id.)

According to Plaintiff, on November 7, 2012, Defendants had him moved to a "Crisis Stabilization Unit" ("CSU") which he asserts is "for people who cut and hurt themsel[ves]," which Plaintiff further avers that he has "never" done. (Id.) In the CSU, Plaintiff alleges that he is denied access to his personal property, is not allowed "store call" or "yard call," is not

---

[2]After he submitted his complaint, Plaintiff filed a supplement containing additional grievances he submitted concerning the events alleged in his complaint. (See doc. no. 5.) While the preferred method is for Plaintiff to include all matters he wishes for the Court to consider as part of his complaint in one filing, the Court will in this instance read Plaintiff's supplement in conjunction with his original complaint. Accordingly, the documents that the Court will proceed to screen include Plaintiff's original complaint and the subsequently filed supplement. (Doc. nos. 1, 5.) For ease of reference, the Court will hereinafter refer to these two documents collectively as Plaintiff's "complaint."

2

allowed to write his family or his lawyer or receive incoming mail, and is not allowed access to the law library. (Id.) Plaintiff summarizes that he is not allowed "one thing any inmate or population inmate can do period." (Id.) Plaintiff avers that he has been provided a mat, a blanket, and a jumpsuit in his cell in the CSU. (Id.) Plaintiff also reports that, initially, "they would not even let [him] have [his] eyeglasses" or his "state T-shoes," and that he had to "go through medical and that took a month," during which time he had to "walk on concreek (sic)" and walk around without his glasses "on hand if [he] needed them." (See id.)

Plaintiff alleges that he has "never" cut or hurt himself, and that he has also not received "any DR's [disciplinary reports] giving them [the] right to do anything like this." (Id.) As of the date he signed his complaint, March 28, 2013, Plaintiff reports that he remained confined in the CSU. (Id.) Plaintiff seeks monetary damages. (See id. at 6.)

B. DISCUSSION

1. No Claim for Cruel and Unusual Punishment Based on Conditions of Confinement in the CSU

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a viable Eighth Amendment claim for cruel and unusual punishment based on the conditions of Plaintiff's confinement in the CSU. In a simultaneously-issued Order, the Court has allowed Plaintiff to proceed with a due process claim based on Plaintiff's assignment to the CSU, but the complaint does not support Plaintiff's assertion that he has been subjected to cruel and unusual punishment, (see doc. no. 1, p. 6).

3

"The Eighth Amendment prescribes punishment that shocks the conscience, offends society's evolving notions of decency or is grossly disproportionate to the offense." Sheley v. Dugger, 833 F.2d 1420, 1428 (11th Cir. 1987).

> The [Eighth] Amendment also imposes duties on these [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."
>
> . . . .
>
> . . . Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities. . . ."
>
> . . . .
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."

Farmer v. Brennan, 511 U.S. 825, 832, 834 (1995) (internal citations omitted); see also Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (noting that conditions of confinement analysis under the Eighth Amendment "should be informed by objective factors to the maximum possible extent.") (quoting Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999)).

The Eleventh Circuit has made clear " that administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley, 833 F.2d at 1428-29. According to Plaintiff, he is provided a mat, a blanket, and a jumpsuit in his cell at the CSU, and he does not allege that he is being deprived of food, medical care, or access to sanitary facilities. Plaintiff's allegations thus fail to demonstrate the deprivation

4

of "the minimal civilized measure of life's necessities." See Overton v. Bazzetta, 539 U.S. 126, 136-37 (2003) (while two-year ban on visitation "undoubtedly [made] the prisoner's confinement more difficult to bear," it did not violate the Eighth Amendment because it did not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety," nor did it "involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur."); see also Sheley, 833 F.2d at 1429 ("Because [Plaintiff] apparently has adequate food, clothing, and sanitation, the conditions of his confinement . . . do not on their face violate the Eighth Amendment."). Plaintiff's allegations about the conditions of his confinement in the CSU are thus not sufficient to state a claim under the Eighth Amendment.

In reaching this conclusion, the Court is aware of Plaintiff's allegations that, after his initial placement in the CSU, he was briefly denied his "T-shoes to support [his] feet with," as a result of which he was "forced to walk on concreek (sic)," and that he was briefly denied his eyeglasses. (Doc. no. 1, p. 5.) Notably, Plaintiff fails to specifically allege who deprived him of these items, merely stating "they" did so. Section 1983, however, "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

Setting that issue aside, however, "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." Chandler, 379 F.3d at 1295; see also Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989) ("[T]he Eighth Amendment may afford

5

protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."). Plaintiff here alleges nothing more than minor inconvenience and, reading his reference to walking on concrete liberally, discomfort. Accordingly, Plaintiff's allegations that he was briefly denied his "T-shoes" and eyeglasses fail to rise to the level of an Eighth Amendment violation. See Chandler, 379 F.3d at 1295; see also Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (*per curiam*) (prisoner failed to state an Eighth Amendment claim based on allegation that he suffered sore feet from going barefoot after he was placed "in the hole"); Logue v. Johnson, CV 410-240, 2012 WL 2863450, at *1-2 (S.D. Ga. July 11, 2012) (Smith, M.J.), *adopted by*, 2012 WL 3096051 (S.D. Ga. July 30, 2012) (Moore, J.) (prisoner plaintiff failed to state Eighth Amendment claim based on jail official losing his eyeglasses where he "was able to move around the jail apparently without incident" and did not allege he suffered any harm as result).

In sum, Plaintiff fails to state a viable Eighth Amendment claim with his allegations regarding the conditions of his confinement in the CSU.

### 2. No Claim for Denial of Access to the Courts Based on Inability to Access Law Library or Lawyer in the CSU

Plaintiff also alleges that he has been denied access to the law library as well as the ability to write or telephone his lawyer while in the CSU. (Doc. no. 1, p. 5.) To the extent he is attempting to state a claim for denial of access to the courts, however, his allegations are insufficient to state a viable claim.

To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging his sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement"). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of such deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.

Blankenship, 163 F.3d at 1290-91 (citations omitted). Stated otherwise, there must be an allegation that the actions of a prison official "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Here, Plaintiff offers only the bare allegations that he has not been allowed access to the law library or to write or telephone his lawyer while in the CSU. Plaintiff fails, however, to specify any actual injury to a nonfrivolous legal action (including the instant case) caused

7

by Defendants. Therefore, Plaintiff fails to state a viable claim for denial of his right to access the courts.

### 3. No § 1983 Claim Based on Violation of Prison Regulations

Finally, Plaintiff asserts that the misconduct alleged in his complaint violated unspecified provisions of the "S.O.P." of the Georgia Department of Corrections. However, an allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations "are primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, No. 11-14547, 2013 WL 462392, at *2 (11th Cir. Feb. 8, 2013) (*per curiam*) (district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances) (citing Bingham, 654 F.3d at 1177-78); see also Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [Plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983."); Rienholtz v. Campbell, 64 F. Supp. 2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table) ("In a § 1983 action, a federal court considers whether a *constitutional* right has been infringed, not whether bureaucratic procedures have been violated."); Taylor v. White, CIV.A. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012), *adopted by* 2012 WL 403849 (S.D. Ala. Feb. 7, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does

8

not state a claim for deprivation of a constitutional right."). Accordingly, Plaintiff has failed to state a separate claim upon which relief may be granted based on Defendants' alleged violation of the S.O.P.[3]

## II. CONCLUSION

For the reasons set forth above, this Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims regarding cruel and unusual punishment, access to the courts, and violation of prison regulations be dismissed for failure to state a claim upon which relief may be granted.

SO REPORTED and RECOMMENDED this 18th day of June, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[3]As noted above, in a simultaneously issued Order, the Court is allowing Plaintiff to proceed with a due process claim based on his allegations that Defendants transferred him to the CSU without any process.

9